UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
HUGH CAMPBELL,                                              Civil Action No.:

                              Plaintiff,

        -against-

IPSOFT INCORPORATED,

                              Defendant.
------------------------------------------------------------X

## COMPLAINT AND JURY DEMAND

        Plaintiff, Hugh Campbell ("Plaintiff"), by and through his attorneys, Neil H. Greenberg &

Associates, P.C., as and for his Complaint against Defendant, IPsoft, Incorporated ("Defendant"),

respectfully alleges as follows:

## JURISDICTION AND VENUE

        1.      This action arises under the Americans with Disabilities Act, 42 U.S.C. §§ 12101

*et seq.* ("ADA"), the New York Executive Law §§ 290 *et seq.* ("NYHRL"), the New York City

Administrative Code § 8-107 ("NYCHRL"), and Title VII, 42 U.S.C. §§ 2000e *et seq.* ("Title

VII").

        2.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, 28 U.S.C. §

1367, and the principles of pendent jurisdiction.

        3.      Venue with respect to this action lies within the Southern District of New York

pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to these

claims occurred in this judicial District.

## PARTIES

4.     Plaintiff is an individual over the age of eighteen (18) who resides in Rosedale, New York.

5.     Defendant is a domestic corporation duly organized and existing under and by virtue of the laws of the State of New York.

6.     Defendant has a principal place of business located at 17 State Street, 14th Floor, New York, New York 10004.

## FACTS

7.     Defendant is in the business of artificial intelligence and computer automation.

8.     Defendant employs more than fifteen (15) employees.

9.     Defendant is an employer within the meaning of the ADA, NYHRL, NYCHRL, and Title VII.

10.     Plaintiff is a black male.

11.     Plaintiff has and continues to suffer from a significant physical impairment to both his feet that substantially limits several life activities, including walking.

12.     Plaintiff began his employment with Defendant on or about July 7, 2009 and was fired on or about January 5, 2018.

13.     When Plaintiff began his employment, he informed Defendant of his disability.

14.     Defendant at all times had a record of Plaintiff suffering from a substantially limiting physical impairment.

15.     During his employment, Plaintiff was regarded as having a substantial physical impairment.

2

16.     During his employment, Plaintiff reported to his superiors at Defendant's 17 State Street location ("the office").

17.     Plaintiff's primary duty was to determine and implement design guides to integrate Defendant's technology with that of Defendant's clients' existing technology.

18.     During his employment, Plaintiff performed his job duties in a satisfactory manner and was nominated for several "Rock Star" awards.

19.     Plaintiff has suffered from a significant physical disability since 2005, which causes him, amongst other things, severe problems walking and navigating obstacles.

20.     From on or about July 7, 2009 until on or about May 2012, Plaintiff worked the overnight shift for Defendant and was able to perform the essential functions of his job without a reasonable accommodation.

21.     In or about May 2012, Plaintiff's work schedule changed to the day shift which required much more mobility.

22.     At that time, Plaintiff requested and was granted a reasonable accommodation which permitted him to work from home five (5) days per week.

23.     Plaintiff worked from home until in or about June 2016.

24.     In or about June 2016, Defendant began requiring Plaintiff to report to the office to work.

25.     Defendant first required Plaintiff to report to the office two (2) days a week.

26.     Then Defendant required Plaintiff to report to the office three (3) days a week.

27.     Then Defendant completely revoked Plaintiff's reasonable accommodation and required him to report to the office five (5) days a week.

28.     Plaintiff was in obvious excruciating pain while at the office and complained to Defendant that he was having great difficulty reporting to the office each day.

29.     In or about March 2017, Defendant revisited its revocation of Plaintiff's reasonable accommodation and agreed to allow Plaintiff to work from home two (2) days per week, usually on Wednesday and Thursday.

30.     Plaintiff continued to work from home two (2) days per week until October 5, 2017, at which time Defendant again completely revoked Plaintiff's reasonable accommodation.

31.     On October 4, 2017, Plaintiff received a phone call from his direct supervisor, during which he yelled and berated Plaintiff because of his reasonable accommodation.

32.     In particular, Plaintiff's direct supervisor told him that he was unreliable, that no one ever knew where he was, that Plaintiff could never be reached by his supervisors, co-workers, or Defendant's clients, and that no matter the reason, Plaintiff was expected to be present in the office from that day forward.

33.     Plaintiff's direct supervisor told him that if he did not comply with this demand, drastic actions would be taken and that Plaintiff would not have a role with the company any longer.

34.     On or about October 5, 2017, Plaintiff filed a complaint with Defendant's Human Resources Department complaining of his supervisor's actions and comments.

35.     At this time, Plaintiff requested a transfer to another department within the company.

36.     After Plaintiff filed this complaint, Defendant promised him on at least two (2) occasions that he was going to be transferred to another department.

4

37.    On or about October 31, 2017, despite knowing that Plaintiff's reasonable accommodation was revoked by his direct supervisor and that Plaintiff had severe difficulty ambulating and getting around, Defendant issued Plaintiff a written reprimand for allegedly being consistently late during the time period of October 9, 2017 to October 31, 2017.

38.    At this time, Defendant again permitted Plaintiff to work from home two (2) days a week, on Wednesdays and Thursdays, while also promising Plaintiff that he will be transferred to another department.

39.    In or about December 2017, after Plaintiff returned from a vacation that Defendant discouraged him from taking, Plaintiff was slowly phased out of telephone meetings and then stopped receiving status reports on the projects that he was working on.

40.    On or about January 4, 2018, Defendant sent out an email notifying Plaintiff's department that the person Plaintiff had been training was going to take his position and that Plaintiff would assume an assistant role.

41.    On or about January 5, 2018, Defendant fired Plaintiff due to alleged poor performance.

42.    When Plaintiff challenged that allegation, Plaintiff was told that he was terminated because the person that he trained was up to speed.

43.    These alleged reasons are completely false.

44.    Additionally, during Plaintiff's employment, his department consisted of about ten (10) individuals, five (5) of whom were minorities of color and/or race.

45.    In or about May 2016, Gavin Cullum, a white male, transferred into Plaintiff's department and became Plaintiff's supervisor.

46.     Almost immediately, Gavin Cullum began terminating or transferring minorities out of Plaintiff's division.

47.     When Plaintiff's employment was terminated, there were only three (3) minorities left, and since Plaintiff was fired, another minority was subsequently transferred out of the department.

48.     Gavin Cullum hired all white employees to replace the minorities he terminated or transferred.

49.     Also, while the white employees were allowed to work from home at their choosing, the minority workers were required to work in the office five (5) days per week, including Plaintiff at various times.

## COUNT I

50.     Plaintiff has and continues to suffer from a significant physical impairment to both his feet that substantially limits several life activities, including walking.

51.     Defendant at all times had a record of Plaintiff suffering from a substantially limiting physical impairment.

52.     During his employment, Plaintiff was regarded as having a substantial physical impairment.

53.     That Defendant discriminated against Plaintiff in the terms, conditions, and privileges of his employment by retaliating against him for repeatedly requesting reasonable accommodations.

54.     That Defendant discriminated against Plaintiff in the terms, conditions, and privileges of his employment by discharging Plaintiff for repeatedly requesting reasonable accommodations.

6

55.     That Defendant discriminated against Plaintiff in the terms, conditions, and privileges of his employment by terminating Plaintiff because of his disability.

56.     That Plaintiff performed the essential functions of his job with a reasonable accommodation.

57.     That the reason given for Plaintiff's termination was false.

58.     That, based upon the foregoing, Defendant violated the ADA.

59.     That as a result of Defendant's violation of the ADA, Plaintiff has sustained lost wages, salary, and employment benefits.

60.     That Plaintiff additionally seeks interest, compensatory damages, punitive damages, costs, and attorney's fees.

## COUNT II

61.     That Defendant violated the NYHRL by discriminating against Plaintiff in the terms, conditions, and privileges of his employment on the basis of his disability and race.

62.     That Defendant discriminated against Plaintiff in the terms, conditions, and privileges of his employment by retaliating against him for repeatedly requesting reasonable accommodations.

63.     That Defendant discriminated against Plaintiff in the terms, conditions, and privileges of his employment by discharging Plaintiff for repeatedly requesting reasonable accommodations.

64.     That Defendant discriminated against Plaintiff in the terms, conditions, and privileges of his employment by terminating Plaintiff because of his disability and his race.

65.     That as a result of Defendant's violation of the NYHRL, Plaintiff has sustained lost wages, salary, and employment benefits.

7

66.     That Plaintiff additionally seeks interest, compensatory damages, punitive damages, costs, and attorney's fees.

## COUNT III

67.     That Defendant violated the NYCHRL by discriminating against Plaintiff in the terms, conditions, and privileges of his employment on the basis of his disability and race.

68.     That Defendant discriminated against Plaintiff in the terms, conditions, and privileges of his employment by retaliating against him for repeatedly requesting reasonable accommodations.

69.     That Defendant discriminated against Plaintiff in the terms, conditions, and privileges of his employment by discharging Plaintiff for repeatedly requesting reasonable accommodations.

70.     That Defendant discriminated against Plaintiff in the terms, conditions, and privileges of his employment by terminating Plaintiff because of his disability and his race.

71.     That as a result of Defendant's violation of the NYCHRL, Plaintiff has sustained lost wages, salary, and employment benefits.

72.     That Plaintiff additionally seeks interest, compensatory damages, punitive damages, costs, and attorney's fees.

## COUNT IV

73.     That Defendant discriminated against Plaintiff in the terms, conditions, and privileges of his employment by discriminating against him and terminating him on the basis of his race.

74.     That upon Gavin Cullum taking over Plaintiff's department, Defendant began firing and transferring minorities out of the department and replacing them with white people.

8

75.     That while white employees were allowed to work from home at their choosing, the minority workers were required to work in the office five (5) days per week, including Plaintiff at various times.

76.     That, based upon the foregoing, Defendant violated Title VII.

77.     That as a result of Defendant's violation of Title VII, Plaintiff has sustained lost wages, salary, and employment benefits.

78.     That Plaintiff additionally seeks interest, compensatory damages, punitive damages, costs, and attorney's fees.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff requests a trial by jury on his claims.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, by and through his attorneys, Neil H. Greenberg & Associates, P.C., demands that judgment be entered against Defendant, and in favor of Plaintiff, as follows:

A.     Declaring Defendant's conduct to be in violation of Plaintiff's rights under Title VII;

B.     Declaring Defendant's conduct to be in violation of Plaintiff's rights under the ADA;

C.     Declaring Defendant's conduct to be in violation of Plaintiff's rights under the NYHRL;

D.     Declaring Defendant's conduct to be in violation of Plaintiff's rights under NYCHRL;

E.     Awarding Plaintiff back pay, front pay, pre-judgment interest, lost fringe benefits, compensatory damages, liquidated damages, punitive damages, costs, and attorney's fees; and

F.      Affording Plaintiff such other, further, and/or different relief as to this Court deems

just and proper.

Dated: Massapequa, New York
       November 15, 2018

NEIL H. GREENBERG & ASSOCIATES, P.C.


Neil H. Greenberg, Esq.
Neil H. Greenberg & Associates, P.C.
*Attorneys for Plaintiff*
4242 Merrick Road
Massapequa, New York 11758
Tel: (516) 228-5100
Fax: (516) 228-5106
nhglaw@nhglaw.com